

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

SAYED NASER NOORI,

Case No.: 25-cv-1824-GPC-MSB

11

Petitioner,

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

12

v.

13

CHRISTOPHER LAROSE, *et al.*,

14

Respondents.

15

16      Petitioner Sayed Naser Noori ("Petitioner") is a native and citizen of
17  Afghanistan. ECF No. 1 ¶ 40. Petitioner submits he was one of the thousands of United
18  States government allies left behind after the Taliban took control of Kabul,
19  Afghanistan in August 2021, and, because of his support of the United States, was
20  forced into hiding and threatened with death. *Id*. ¶ 1. In fear for his life, he fled
21  Afghanistan and sought asylum in the United States. *Id*. On July 6, 2024, after learning
22  of Petitioner's lack of criminal history, researching government records and reviewing
23  Noori's documents from Afghanistan, the Customs and Border Protection ("CBP")
24  officer paroled him into the United States pending 240 removal proceedings. ECF No.
25  9, Ex. 1; ECF No. 10, Ex. 1. On June 12, 2025, after orally moving to dismiss the 240
26  proceedings, but before the motion was granted, the government arrested Noori,
27  detained him at the Otay Mesa Detention Center under the custody of the U.S.

28

Department of Homeland Security ("DHS") and placed him in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). ECF No. 1 ¶¶ 49-50.

On July 17, 2025, Petitioner filed a petition for writ of habeas corpus, naming the Warden of the Otay Mesa Detention Center, Immigration and Customs Enforcement and Removal Operations ("ICE")'s Field Office Director for the San Diego Field Office, and several other individual agency officials as respondents ("Respondents"). ECF No. 1. A hearing on the petition was held on September 25, 2025. ECF No. 13. In a three-page truncated order, the Court GRANTED in part the petition and found that DHS violated Petitioner's due process rights and ordered his immediate release. ECF No. 14. This Order provides a fuller legal analysis and legal basis for the September 26, 2025 Order.

I.    **BACKGROUND**

   **A. Factual Background**

After the Taliban took control of Afghanistan in August 2021, Petitioner and his family went into hiding, but in September 2021, the Taliban discovered their location and executed Petitioner's brother and detained his father for questioning. ECF No. 1 ¶ 1. Facing this danger, he fled Afghanistan and sought asylum in the United States. *Id*. On July 5, 2024, he presented himself at the U.S. Port of Entry in San Ysidro, California and applied for admission with a CBPOne application. *Id*. ¶ 42. Petitioner did not possess a valid entry document at arrival. ECF. No. 9 at 8.[1] On July 6, 2024, after noting Petitioner's lack of criminal history, checking government records, and reviewing Noori's documents from Afghanistan, the CBP officer determined Petitioner appeared to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), served Petitioner with a I-862 Notice to Appear ("NTA"), and paroled him into the United States pending 240 proceedings, under the class of admission "DT." *Id*., Ex. 1; ECF No. 10, Ex. 1. As

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

represented in the NTA, Respondents commanded he appear for a hearing on September 7, 2027. *Id.*, Ex. 2.

On August 7, 2024, Respondents issued work authorization to Petitioner pursuant to 8 C.F.R. § 274a.12(c)(11), which was valid through July 4, 2026. ECF No. 1 ¶ 47. Petitioner regularly complied with and appeared for ICE check-ins and, on March 13, 2025, applied for asylum before the San Diego Immigration Court. *Id.* ¶¶ 45-46.

Around April 11, 2025, Petitioner received a message through a mass, generic notification system, indicating Respondents were revoking his parole. *Id.* ¶ 48. On June 12, 2025, a Form I-200, Warrant for Arrest was issued for the arrest of Petitioner. ECF No. 9 at 9. Later that same day, Petitioner appeared for his immigration court hearing. ECF No. 1 ¶ 49. At the hearing, Respondents orally moved to dismiss the case, asserting Petitioner's NTA had been improvidently issued. *Id.* Government counsel, upon inquiry, refused to inform the court how the NTA was improvident but stated that Petitioner was to be detained and placed in expedited removal. *Id.* The court did not grant the motion to dismiss that day and, instead, set a new hearing for September 15, 2025. ECF No. 10 at 5, Ex. 2.

As Petitioner left the courtroom, he was detained by ICE agents. ECF No. 1 ¶ 50. Petitioner states that when his counsel asked for a warrant, ICE agents refused to produce one. *Id.* That day, Petitioner was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) and issued an Order of Expedited Removal. ECF No. 9 at 9. Petitioner was not provided individualized notice or reasoning for the Government's actions.

On June 26, 2026, the immigration court granted the motion to dismiss that had been requested by Respondents on June 12, 2025. *Id.* at Ex. 3. On July 11, 2025, Petitioner was interviewed by a U.S. Citizenship and Immigration Services asylum officer. *Id.* at 9. After the officer's positive determination, Petitioner was issued a new

Notice to Appear on July 12, 2025, commencing new 240 proceedings. *Id*. Petitioner remains detained in ICE custody. *Id*.

### B. Procedural Background

On July 17, 2025, Petitioner filed his petition for writ of habeas corpus. ECF No. 1. On August 29, 2025, Respondents filed a return in opposition to the habeas petition. ECF No. 9. Petitioner filed a reply on September 4, 2025. ECF No. 10.

Petitioner presents two claims under the Fifth Amendment Due Process clause. Specifically, "Petitioner was not advised by DHS that they sought to terminate his proceedings in order to place him in expedited removal, depriving him of the bundle of rights associated with his pending asylum application." ECF No. 1 ¶ 67 (First Cause of Action). Additionally, Petitioner argues that the January 2025 Designation, Office of the Secretary, Dept of Homeland Security, Designating Aliens for Expedited Removal, 15 Fed. Reg. 8139 ("2025 Designation")—which expanded the application of expedited removal—does not unmistakably apply to individuals, like Petitioner, who entered the United States prior to its effective date. *Id*. ¶¶ 79-80 (Third Cause of Action).

Second, Petitioner has alleged three causes of action, asserting that Respondents violated the Administrative Procedure Act ("APA"). The APA causes of action allege that Respondents have (1) unlawfully detained Petitioner categorically without individualized consideration of the facts, (2) violated 8 C.F.R. § 239.2(a) by dismissing proceedings without an enumerated ground, and (3) violated 8 U.S.C. § 1225(b) because "expedited removal statute does not apply and may not be applied to individuals who were 'paroled' into the United States." *Id*. ¶¶ 72, 88, 91 (Second, Fourth, and Fifth Causes of Action).

Petitioner asserts jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). *Id*. ¶ 6. Relief is sought under the habeas corpus statute, 29 U.S.C. § 2241, et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, et. seq., the All Writs

Act, 28 U.S.C. § 1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2). *Id.* ¶ 7.

The Petitioner asks the Court to (1) grant the instant petition for a writ of habeas corpus, (2) declare the Petitioner's detention violates the Due Process Clause, (3) declare application of the January 2025 Designation to Petitioner illegal, (4) issue an order prohibiting the Respondents from transferring Petitioner from the district without the Court's approval, and (5) award Petitioner attorney's fees and costs under the Equal Access to Justice Act and on any other basis justified under law.

On September 26, 2025, in a three-page order granting the petition in part, the Court declared the Petitioner's detention violates the Due Process Clause. In summary, the Court found:

1. Petitioner could not have been legally subjected to and detained under expedited removal proceedings on June 12, 2025 because his original 240 proceedings had not yet been dismissed and were still pending at the time of his detainment.

2. The Government revoked Petitioner's parole without notifying him, providing him reasoning for the revocation, or giving him an opportunity to be heard, denying Petitioner of his due process rights.

3. Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.

4. Petitioner's parole was categorized as DT, a type of humanitarian parole, and as established by 8 C.F.R. § 212.5(e)(2)(i), revocation of that parole requires written notice of termination, which Petitioner was not provided.

Herein, the Court addresses the jurisdictional issues raised by Respondent and provides the legal basis and analysis supporting its findings and conclusions.

II. **STATUTORY FRAMEWORK**

A. **Standard & Expedited Removal Proceedings**

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular

removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). The regular removal procedure is also known as "section 240 proceedings." 240 proceedings involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country. 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The DHS Secretary has discretion to release a noncitizen on parole during this process. In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id.* § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

Here, the parole status conferred upon Petitioner was identified as "DT," which the parties acknowledged at the oral argument hearing described a "humanitarian" parole. The "humanitarian" parole process is described in Section 1182 as follows:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien *and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served* the alien shall forthwith return or be returned to the custody from which

he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added) ("Parole Statute").

The second, more streamlined process is expedited removal, governed by 8 U.S.C. § 1225. Under these proceedings, noncitizens can be ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because of the truncated procedure, expedited removal is limited to noncitizens meeting several requirements. First, a noncitizen is potentially eligible for expedited removal if he (1) sought to procure immigration status or citizenship via fraud or false representations or (2) "at the time of application for admission," failed to satisfy certain documentation requirements. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7). Second, expedited removal is further cabined to noncitizens who 1) are categorized as "arriving in the United States," or 2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id*. § 1225(b)(1)(A)(i)–(iii). Within that second requirement, the Attorney General can designate the population of noncitizens subject to expedited removal. *Id*. § 1225(b)(1)(A)(iii)(I).

Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing. *Thuraissigiam*, 591 U.S. 103, 110 (2020).

### B.    2025 Designation for Expedited Removal

The Attorney General has delegated the office's expedited removal designation power to the DHS Secretary. Before January 2025, DHS had only designated noncitizens as eligible for expedited removal if they were identified as "arriving," had arrived by sea within the last two years, or had been apprehended within 14 days of entry and 100 miles of the border. *See* Notice Designating Aliens Subject to Expedited

Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In January 2025, DHS published the 2025 Designation, authorizing expedited removal to be exercised to the "full scope of its statutory authority." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). DHS has stated that this full scope applies to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id*.

In its implementation of the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief" and executing "courthouse arrests." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *5 (D.D.C. Aug. 29, 2025). The DHS' typical procedure for these courthouse arrests consist of "moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in the section 240 proceedings." *Id*.

III.    **DISCUSSION**

    **A.    Jurisdiction**

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241, the Suspension Clause, and federal question, 28 U.S.C. § 1331. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims, stating that (1) Petitioner's claims are moot, (2) the petition brings improper habeas claims, and (3) the claims and relief are barred under 8 U.S.C. § 1252(a)(2)(A), § 1252(b)(9),

/ / /

25-cv-1824-GPC-MSB

§ 1252(e), and § 1252(g).

### 1.    Mootness

"Mootness is a threshold jurisdictional issue." *S. Pac. Transp. Co. v. Pub. Util. Comm'n of State of Or.*, 9 F.3d 807, 810 (9th Cir. 1993). The doctrine of mootness ensures a federal court presides only over those actions that present "a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). An action is moot when a litigant no longer has "a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)). If an event occurs "that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

Here, Respondent argues that "Petitioner's causes of action arise from his placement in expedited removal proceedings," and because he is now in new 240 proceedings rather than expedited removal proceedings, the petition is moot. ECF No. 9 at 11. However, as Petitioner clarifies in his reply, the petition asks the Court to "determine if his detention was lawful and, if not, that he be released." ECF No. 10 at 7. The issue is "not whether Mr. Noori can file his asylum claim." *Id*. As Petitioner is still detained and contests the lawfulness of the expedited removal proceedings that led to his detainment, the petition's causes of action are not moot.

### 2.    Habeas Corpus Claim

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411

U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement).

A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

Here, Respondent argues that the petition should be denied because "Petitioner is not challenging the lawfulness of his custody…[but instead] challenging the decision to dismiss his prior 240 proceedings, his placement into expedited removal, and the type of review over his asylum claims within expedited removal." ECF No. 9 at 11. Essentially, Respondent characterizes Petitioner's claims as seeking judicial review under the APA, which does not govern habeas proceedings. *Id*. at 12; *see also Flores-Miramontes v. INS,* 212 F.3d 1133, 1140 (9th Cir. 2000).

However, this petition is challenging the lawfulness of Petitioner's detention and requesting his release under 28 U.S.C. § 2241. *See* ECF No. 10 at 7. The Petitioner, here, is utilizing the APA in his petition to challenge the lawfulness of his detention. Those underlying arguments do not subsume the core of the habeas petition, simply upon mention of the APA. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 151-52 (W.D.N.Y. 2025). Thus, the Petitioner's habeas claims do arise under § 2241 and are properly brought.

### 3. Immigration and Nationality Act ("INA") Jurisdictional Bars

The government argues that this Court lacks subject-matter jurisdiction over Petitioner's claims because the claims "stem from DHS's decision to arrest and detain Petitioner pending removal proceedings." ECF No. 9 at 12. Respondents maintain that jurisdiction would, thus, be barred under 8 U.S.C. §§ 1252(a)(2)(A), 1252(b)(9), 1252(e), and 1252(g). *Id*.

### a. Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." 8 U.S.C. § 1252(g). However, Petitioner does not challenge the decision to commence proceedings.  Instead, Petitioner challenges the legality of the revocation of humanitarian parole in violation of the law and dismissal of ongoing removal proceedings without due process. ECF No. 10 at 9. Even assuming that the revocation of parole constitutes a decision or action to adjudicate cases, they are not protected under § 1252(g). That is because agency action is not "specified … to be in the discretion" of the official where the action "was not performed in accordance with the mandatory … procedures." *Sharkey v. Quarantillo*, 541 F. 3d 75, 86 (2d Cir. 2008); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) ("[A]lthough the ultimate decision on whether to grant asylum is committed to the Attorney General's discretion, relief under withholding of removal is mandatory if the petitioner establishes that his 'life or freedom would be threatened' in the country to which he would be removed on account of one of the five protected grounds.").

In this case, revocation of parole did not follow mandatory procedures. Petitioner asserted at oral argument, without objection, that his parole was classified as "DT," a type of humanitarian parole. ECF No. 10, Ex. 1. This humanitarian status is further indicated by his work authorization, ECF No. 1 ¶ 47, which was provided pursuant to 8 C.F.R. § 274a.12(c)(11) and specifically limits authorization to applicant noncitizens who are "paroled into the United States temporarily for urgent humanitarian reasons or significant public benefit," 8 C.F.R. § 274a.12(c)(11). As a

result, Petitioner is subject to the statutory and regulatory limitations for revocation of his humanitarian parole. These limitations were not adhered to.

Under regulation, humanitarian parole can only be terminated "upon accomplishment of the purpose for which parole was authorized" or "when…neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e). Here, no explanation was provided for terminating humanitarian parole. There is no suggestion that the purpose for which parole was granted had been accomplished. Because these procedures are mandatory and were not followed, the decision to revoke the humanitarian parole and to dismiss the 240 removal proceedings was not a lawful exercise of discretion.

Further, a decision to detain Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

### b.    Section 1252(b)(9) – Zipper Clause

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) is seen as a general jurisdictional limitation that channels judicial review of immigration actions and decisions and acts as a zipper clause. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483

(1999). "However, what it 'zips' are requests for review of various kinds of agency action which are heard by means of petitions for 'judicial review'…[i]t does not affect petitions for habeas corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133 (9th Cir. 2000).

Respondents argue that Petitioner's detention "arises from DHS's decision to commence such proceedings against him," which would divest this Court of jurisdiction. ECF No. 9 at 15. However, § 1252(b)(9) cannot be stretched to preclude jurisdiction for this petition because "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (finding cramming judicial review of detention questions into the review of final removal orders would be absurd).   Adopting Respondent's application of § 1252(b)(9) would permit an excessive detention to take place by the time a final order of removal was eventually entered. *Id*. As such, § 1252(b)(9) does not present a jurisdictional bar to the instant petition.

### c.    Section 1252(a)(2)(A) & (e) - Expedited Removal

Respondent also argues 8 U.S.C. § 1252(a)(2)(A) and § 1252(e) strip this Court of jurisdiction over this petition. These provisions specifically fall within the purview of the expedited removal process.

8 U.S.C. § 1252(a)(2)(A) provides that, except as provided in § 1252(e) and notwithstanding habeas petitions under 28 U.S.C. § 2241, "no court shall have jurisdiction to review" (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal statute; (3) "the application of [§ 1225(b)(1)] to individual aliens, including the [credible fear] determination made under [§] 1225(b)(1)(B); and (4) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1) ]." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iii) & (iv).

Judicial review of expedited removal orders is strictly limited to those grounds enumerated in 8 U.S.C. § 1252(e)(2). *See* 8 U.S.C. § 1252(a)(2)(A). Under the provision, an individual in expedited removal proceedings may file a habeas petition in a federal district court to challenge only three DHS determinations: (1) whether the individual is a noncitizen, (2) whether the individual was ordered removed via expedited removal, and (3) whether the individual is a lawful permanent resident or has another status warranting exemption from expedited removal. 8 U.S.C. §§ 1252(e)(2)(A)-(C). Judicial review of whether a petitioner was ordered removed is "limited to whether such an order in fact was issued and whether it relates to the petitioner." 8 U.S.C. § 1252(e)(5). "There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal." *Id.*

Based on these provisions, Respondents argue that each of Petitioner's claims fall outside the limited habeas corpus authority provided under § 1252(e)(2). However, Petitioner does not challenge the discretionary decision to place him in expedited proceedings or the implementation of proceedings thereafter. *See id*; *Barrientos v. Baltazar*, No. 5:24-CV-00005, 2024 WL 5455686, at *4 (S.D. Tex. Dec. 18, 2024), *report and recommendation adopted*, No. 5:24-CV-00005, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025) (finding that petitioner was not challenging his expedited removal order but a twenty-year bar allowing his detention). Rather than questioning the exercise of discretion in selecting the expedited removal process, Petitioner is challenging the way Respondents revoked his humanitarian parole, dismissed the removal proceedings and detained him, all in violation of the Constitution and the laws of this country. The crux of Petitioner's argument is that the government did not have lawful authority to take these steps in order to illegally initiate an expedited removal proceedings and detain him as he was exiting the courtroom. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *6-7 (W.D.N.Y. July 16, 2025) (finding jurisdiction where petitioner challenged the initiation of expedited removal proceedings despite a pending appeal on the dismissal of 240 proceedings).

Given the nature and substance of the Petitioner's attack, neither § 1252(a)(2)(A) or § 1252(e) deny the Court of its jurisdiction to entertain the petition.

### d.    Section 1252 Generally

The Respondent's jurisdictional arguments on Section 1252 also fail when considered in the broader context of the statutory provisions. Specifically, as Petitioner points out, the jurisdiction-stripping provisions of 8 U.S.C. § 1252 apply over *final* orders of removal. *See* 8 U.S.C. § 1252(b)(9); *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) ("[T]he entire section is focused on orders of removal."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) ("By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal."). Where a petitioner "does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order" the jurisdiction-stripping provisions do not apply. *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008). Thus, given Petitioner is challenging his detention prior to the issuance of any final order, this Court retains jurisdiction.

### 4.    Suspension Clause

To avoid the INA jurisdiction stripping bar, Petitioner offers the Suspension Clause as an alternative basis to entertain his petition.  ECF No. 1 ¶ 6. Under the Suspension Clause, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I ¶ 9, cl. 2. In determining the reach of the Suspension Clause, the Court is required to consider "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Boumediene v. Bush*, 553 U.S. 723, 766 (2008).

For the first factor, although Petitioner is not a citizen, he was paroled into the United States upon a finding that he was not a flight risk or a danger to the community.

He has remained here for more than a year and in that time has received a work authorization and has developed ties to the community. If Section 1252 were to deprive the Court of jurisdiction to review Petitioner's detention, Petitioner would have no ability to challenge his detention and has no right to challenge Respondents' decision to terminate his parole. Additionally, Petitioner was apprehended and detained within the United States. Finally, Respondents have not presented any credible arguments that any practical obstacles prevent Petitioner from entitlement to the writ of habeas. There is no evidence that Petitioner is a danger to the community or a flight risk—in fact, Respondents decided to parole Petitioner when he arrived without ties to the community after determining that he did not have any criminal history and then approved a work authorization. It also appears that Petitioner has complied with the law during his time in the United States. Thus, even if Section 1252 precluded the Court from reviewing Respondents' decision to terminate Petitioner's parole and detain him, the Court would have jurisdiction to review this decision under the Suspension Clause. *Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *10 (D. Or. July 9, 2025).

## B.    Petitioner's Arrest and Detention

Petitioner claims his detention following the Respondent's oral motion to dismiss his 240 removal proceedings violates the Fifth Amendment Due Process Clause and the Administrative Procedure Act. ECF No. ¶¶ 39, 50, 72. Respondent argues that Petitioner's parole was properly revoked, and Petitioner is lawfully subject to mandatory detention. ECF No. 9 at 18-21.

### 1.    Fifth Amendment Due Process

#### a.    Entitlement to Due Process Rights

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside our borders, once a noncitizen "enters the country, the legal circumstances changes, for the Due Process

Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Under this wide umbrella, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, Petitioner has "passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Because Petitioner has developed an interest in remaining during his time here, "the procedures used to remove [him] must adequately protect" that interest. *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025).

The Respondents, however, rely heavily on *Thuraissigiam* and contend that the Petitioner is only allowed the due process rights statutorily afforded by Congress. ECF No. 9 at 20. Thus, in their view, Petitioner's detention does not violate the Fifth Amendment's Due Process Clause because the statutory authority of 8 U.S.C. § 1225(b)(1)(B)(ii), which they assert Petitioner has been detained under, "does not afford him a right to a determination by this Court as to whether his release is warranted nor a right to a bond hearing before an immigration judge." *Id*.

However, this is a misreading of *Thuraissigiam*. As Respondents acknowledge in their return, *Thuraissigiam* "addressed the due process rights of inadmissible *arriving* noncitizens." *Id*. at 21 (emphasis added). In that case, the respondent was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those "in *respondent*'s position ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (emphasis added). This holding only reinforced the precedent that noncitizens "on the threshold

of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. 212.

In this case, Petitioner is not an "arriving" noncitizen but one that has present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal. *See Yamataya v. Fisher,* 189 U.S. 86, 87 (1903) (finding a noncitizen was entitled to due process before removal despite having spend only four days in the US).

### b.    Government's Adherence to Due Process

Generally, due process protections depend on the situation and must account for (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, Petitioner alleges that he was detained while his removal proceedings were pending without any opportunity to be heard prior to being arrested and detained.  ECF No. 1 ¶ 50. Also, Petitioner asserts he was subject to the implementation of DHS' 2025 Designation, which violated due process. ECF No. 1 at 15, 21-22. Specifically, he claims that he "was not advised by DHS that they sought to terminate his proceedings in order to place him in expedited removal, depriving him of the bundle of rights associated with his pending asylum application" and retroactively and unlawfully subjected to expedited removal under the 2025 Designation. *Id*. at 19, 22.

First, Petitioner has a private interest in remaining free, which developed over the year he resided in the United States. *See Morrissey v. Brewer,* 408 U.S. 471, 482-483 (1972); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This liberty interest applies to Petitioner, even in his parole status. For example, *Morrissey*—though analyzing the criminal parole context—found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty

and its termination inflicts a grievous loss on the parolee and often others…[thus it] must be seen within the protection of the [Fifth] Amendment." 408 U.S. at 482.

In the deportation context, detention has minimum due process protections. Generally, detention is seen "as a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and the government holds the discretion to detain an immigrant pending removal, 8 U.S.C. § 1226(c). However, that discretion is not unbounded. Detention pending removal proceedings has "two regulatory goals"—ensuring future appearances and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This logically also extends to the granting of parole and its revocation. *Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992) ("[I]n each case a district director must determine whether a particular person is likely to flee, and whether that person's continued detention would be in the public interest."); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). These primary goals provide guidance for the floor of due process afforded to noncitizens for detention and parole.

Further, Petitioner has a Fifth Amendment right to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Here, Petitioner was initially provided due process for his removal proceedings following his arrival on July 5, 2024. ECF No. 1 ¶ 42. He was able to apply for admission and was given parole after an interview with a CBP officer who determined he was not a flight risk or a danger to the community. *See* ECF. No. 9, Ex. 1. He was given work authorization and was informed of the procedure he would need to abide to for his removal proceedings and to apply for asylum. *Id*., Ex. 2; ECF. No. 1 ¶ 46-47. The proceedings have created a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees. Thus, Petitioner was entitled to due process in

his parole revocation. Particularly, he was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination.

Second, the procedures used present a substantial risk of erroneous deprivation of those interests and are not outweighed by the Government's interest. In *Make the Rd. New York v. Noem*, which considers the application of the 2025 Designation and courthouse arrests, the court determined that "[b]efore removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee." No. 25-CV-190 (JMC), 2025 WL 2494908, at *14 (D.D.C. Aug. 29, 2025). Each of these determinations present a substantial risk of error and harm to Petitioner's interests in remaining and liberty. This is especially true in regard to the credible fear interview—where individuals might not be appropriately referred for the interview or not afforded an effective opportunity to be heard—and the continual presence determination. *Id*. at *15-17.

Respondents have failed to demonstrate a significant interest in Petitioner's detention. Respondents did not provide Petitioner individualized notice and reasoning prior to his arrest and detention on June 12, 2025 and have presented no legitimate reason for why those decisions were made. Any governmental interest of efficient administration of immigration laws by using courthouse arrests does not outweigh these first two factors. *See id*. at *19. Petitioner does not have a criminal record and has regularly complied with and appeared for ICE check-ins and court hearings. There is no indication that he is a flight risk or presents a danger to the community, which strike at the core, guiding goals for parole, and Respondents have not supplied any additional information to the contrary. "At its foundation, due process prohibits

detaining an individual without justification." *Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1692739, at *5 (D. Minn. June 17, 2025). Denying Petitioner notice and reasoning on the termination of his 240 removal proceedings, his placement into expedited removal proceedings, and revocation of his parole took away a meaningful opportunity to contest and violated due process. *See Pinchi*, 2025 WL 2084921, at *4; *Y-Z-L-H v. Bostock,* No. 3:25-CV-965-SI, 2025 WL 1898025, at *13-14 (D. Or. July 9, 2025).

Finally, "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). The Supreme Court has limited retroactivity under the Due Process Clause under its "prohibition against arbitrary and irrational legislation." *United States v. Carlton,* 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Abiding to this principle, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The 2025 Designation's language does not clearly require that it be applied to individuals who entered the United States prior to its effective date. Therefore, executing the Designation over Petitioner who entered the country before the Designation's effective date violated the Due Process Clause.

For those reasons, the Court finds that Petitioner's due process rights have been violated.

### 2.    Administrative Procedure Act

Under the APA, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). For a challenged agency action to be upheld, the agency "must explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (internal quotations omitted) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Petitioner argues Respondents violated APA when they "categorically revoked Petitioner's parole and transferr[ed] him to Otay Mesa Detention Center without consideration of his individualized facts," initiated expedited removal proceedings without lawful authority, and subjected him to expedited removal despite that fact that the proceedings "may not be applied to individuals who were 'paroled' into the United States." ECF No. 1 at 20, 22, 24.

Respondents, in turn, argue that the APA does not provide relief because this Court is unable to review agency actions that are not final. ECF No. 9 at 22. Further, Respondent purports the lawfulness of their actions as being in accordance with 8 U.S.C. §§ 1226(b), § 1225(b)(1). They maintain that 8 U.S.C. § 1226(b) allows them to revoke parole at any time and that "discretionary decisions under Section 1226 are not subject to judicial review." ECF No. 9 at 19. They also point to § 1225(b), stating that the provision mandates detention throughout the completion of removal proceedings. *Id*.

### a.    Legal standards Under the APA

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61–62 (2004). Reviewable agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency

action is deemed final if it (1) "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process," *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948), and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

### b.    Failure to Abide by APA

In general, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Revocation of humanitarian parole has additional limitations under law. Humanitarian parole is granted under the Parole Statute "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," and that statute states that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Following this, a noncitizen should not be returned to custody unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock,* No. 3:25-CV-965-SI, 2025 WL 1898025, at *12 (D. Or. July 9, 2025). Under regulation, humanitarian parole can only be terminated " upon accomplishment of the purpose for which parole was authorized" or "when…neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e). In sum, to meet statutory and regulatory requirements, revocation should only occur when (1) the parole's purpose is served or (2) when humanitarian reasons and public benefit are no longer warranted, *and* the noncitizen is provided written notice. *Bostock*, 2025 WL 1898025, at *12-13.

However, though he was provided a generic notification about the revocation of his parole, ECF No. 1 ¶ 48, neither of the other two conditions were met. First, Petitioner was paroled into the United States based on his intent to seek asylum—the purpose of his parole. He applied for asylum and was still in the middle of those proceedings when Respondents issued and executed the revocation. Therefore, the purpose of Petitioner's parole had not been served at the time of termination, and Respondents do not argue otherwise. Thus, Respondents have not complied with the Parole Statute and do not meet the first pathway offered by 8 C.F.R. § 212.5(e).

Second, humanitarian reasons still warrant the Petitioner's presence in the country. Petitioner had aided United States forces against the Taliban, and since the United States left Afghanistan, Petitioner was forced to go into hiding and was threatened with death. ECF No. 1 ¶¶ 1, 41. Respondents offered no evidence to the contrary and, thus, have failed to show that they complied with the second clause of 8 C.F.R. § 212.5(e) as well.

Even if Petitioner was not granted humanitarian parole, courts have found—and this Court agrees in finding—that revocation of that parole similarly requires an individualized determination. *See, e.g.*, *Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *13-14 (D. Or. July 9, 2025) (finding parolee must receive written notice of impending revocation with reasons for revocation); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals."); *Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *6 (E.D. Cal. Aug. 14, 2025) (finding a case-by-case analysis is needed to revoke parole); *Garcia v. Andrews*, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *12 (E.D. Cal. Aug. 21, 2025); *but see Doe v. Noem*, No. 25-1384, 2025 WL

2630395, at *9 (1st Cir. Sept. 12, 2025) (finding an individualized termination of parole is not required).

Thus, here, Respondents' argument that the challenge to DHS' discretion to revoke cannot be reviewed does not stand. Respondents must provide at minimum some reasoning explaining why the Petitioner would now be considered a flight risk or danger to the community. *See Castellon*, 2025 WL 2373425, at *12; *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025). Given Respondents have not attempted to justify the revocation for Petitioner, this Court holds the Respondent has acted arbitrarily and capriciously in violation of the APA.

### c.    Initiation of Expedited Removal Proceedings

The application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

As discussed previously, Petitioner is no longer an "arriving" noncitizen after having resided here for over a year. Also, though he has not been present in this country for a 2-year period, he *has* been paroled into the United States. Therefore, the Court finds that Petitioner could not be subject to § 1225.

Moreover, Petitioner could not have been subjected to expedited removal proceedings on June 12, 2025. His original 240 proceedings were not dismissed until June 26, 2025. ECF No. 9, Ex. 3. Thus, detaining him under § 1225(b) on June 12 had no legal basis. *See*, *e.g.*, *Javier Tomas Munoz v. Paul Arteta, et. al.,* No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025).

In sum, Respondents' actions are arbitrary, fail to adhere to the law, and therefore, violate the APA.

IV.    **CONCLUSION**

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondents shall not cause Petitioner to be re-detained during the pendency of his removal proceedings without prior leave of this Court. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records by October 14, 2025, and Respondents are instructed to file any opposition by October 28, 2025.

**IT SO ORDERED.**

Dated:  October 1, 2025

Hon. Gonzalo P. Curiel
United States District Judge